# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Sharon Luster,

                 Plaintiff,       Case No. 13-cv-14748
                                    Hon. Judith E. Levy
v.                                Mag. Judge Charles E. Binder

Commissioner of Social Security,

                 Defendant.

_____/

## OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [18]. DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [12], AND GRANTING DEFENDANT'S MOTION FOR SUMMARY <u>JUDGMENT [17]</u>

Plaintiff Sharon Luster brings this action pursuant to 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's denial of her application for disability insurance benefits under the Social Security Act. Cross motions for summary judgment were filed (Dkt. 10; Dkt. 17) and this case was referred to Magistrate Judge Charles E. Binder for issuance of a Report and Recommendation. Magistrate Judge Binder recommended that the Court deny plaintiff's motion for summary judgment, grant defendant's motion for summary judgment, and affirm

the Commissioner's final decision denying plaintiff disability benefits. Plaintiff filed timely objections to Magistrate Binder's Report and Recommendation. (Dkt. 19). The Commissioner filed no response and the time to do so has expired.

For the reasons set forth below, plaintiff's objections to the Report and Recommendation are denied. The Court adopts the Report and Recommendation, denies plaintiff's motion for summary judgment, grants defendant's motion for summary judgment, and affirms the Commissioner's final decision.

## I.    Factual Background

The Court adopts the facts set forth in the Report and Recommendation and highlights the following portions of the record.

Plaintiff was 45 years old at the time she filed for disability. (Dkt. 10-6 at 43-44). She previously worked as a cashier, customer service associate, bank teller, direct care worker, security guard, plant laborer, and stock worker. (Dkt. 10-3 at 10; Dkt. 10-6 at 5-11). Most recently, between November 2007 and August 2011, plaintiff worked as a vision center associate at Wal-Mart. (Dkt. 10-6 at 5). Plaintiff applied for and collected unemployment compensation from the State of Michigan from

the third quarter of 2011 through the first quarter of 2012. (Dkt. 10-2 at 16). Plaintiff's disability application alleged a disability onset date of August 2, 2011 due to severe anemia, blood clots in her lungs and legs, and an HIV-positive diagnosis. (Dkt. 10-3 at 3).

## a. Plaintiff's Medical Record

Plaintiff was diagnosed with HIV infection in 2004. (Dkt. 10-7 at 110). She was prescribed and currently takes Atripla, an antiretroviral medication. (*Id.*). Plaintiff claimed in late 2011 that the Atripla caused her to have night sweats, bad dreams, and episodes of forgetfulness. (Dkt. 10-6 at 20). Plaintiff suffered from a number of HIV-related infections in 2011 and 2012; however, plaintiff's medical records indicate that Atripla successfully controlled the infections and kept her condition stable and asymptomatic. (Dkt. 10-3 at 6-7; Dkt. 10-7 at 5, 29, 107, 222-23, 226).

Plaintiff also suffered from anemia, which necessitated a blood transfusion in May 2011, and a regular dose of iron tablets. (Dkt. 10-7 at 29). To address her anemia, plaintiff had a laparoscopic hysterectomy and adhesiolysis for menorrhagia secondary to uterine fibroids in September 2012. (Dkt. 10-8 at 10). She developed a pelvic

3

abscess as a complication from that surgery. (*Id.*). Plaintiff was hospitalized and treated with antibiotics, after which the abscess resolved. (*Id.*).

Plaintiff was also diagnosed with hypothyroidism in May 2011 and prescribed Tapazole. (Dkt. 10-7 at 3, 29, 45, 57). Plaintiff has a history of syncope, and on occasion she reported blurred vision, dizziness, weakness, (*id.* at 2-3, 16), aches, pains, and shortness of breath. (*Id.* at 43, 45, 49, 78). A CT scan, MRI, radiological exam, and EEG revealed no brain abnormalities. (*Id.* at 15-19).

Plaintiff was also diagnosed with a pulmonary embolism ("PE") and deep vein thrombosis ("DVT") in her right leg in June 2011. (*Id.* at 47, 54-55). Plaintiff claimed that her daily activity was restricted to sitting in a chair and propping up her leg due to the associated swelling and pain. (Dkt. 10-6 at 14-16). However, plaintiff's medical records indicate that she was able to walk and continue her daily activities despite the pulmonary embolism and deep vein thrombosis. (Dkt. 10-7 at 45; Dkt. 10-8 at 46, 96).

Plaintiff was placed on Coumadin, a blood thinner, to treat her PE and DVT, but her symptoms recurred during a lapse in compliance in

late 2011 when she ran out of medication.  (Dkt. 10-7 at 86, 106-07, 148-50, 217).  In June 2012, plaintiff was temporarily taken off Coumadin to allow for testing and surgery for uterine fibroids; while off the medication, she suffered another recurrence of PE and DVT in July 2012.  (Dkt. 10-8 at 90, 96, 103).  Plaintiff resumed Coumadin treatment following the recurrence of her PE and DVT.  (*Id.* at 116).

Dr. B.D. Choi, a medical consultant for the Social Security Administration, examined plaintiff's condition and plaintiff's medical records in February 2012.  (Dkt. 10-3 at 8).  Dr. Choi confirmed that plaintiff was HIV-positive, suffered from severe anemia, and had blood clots in her lungs and legs.  (*Id.* at 6).  Dr. Choi noted that plaintiff had difficulty breathing while walking, gasped for breath, and appeared very fatigued.  (*Id.* at 7).  Dr. Choi found that the symptoms plaintiff claimed to suffer, including the intensity, persistence, and functionally limiting effects of those symptoms, were substantiated by the objective medical evidence.  (*Id.* at 8).

Dr. Choi conducted a residual functional capacity ("RFC") test to determine plaintiff's exertional and non-exertional limitations.  Dr. Choi found that plaintiff could occasionally lift and carry twenty

pounds, frequently lift and carry ten pounds, stand for six hours, and sit for six hours. (*Id.*). Dr. Choi also considered plaintiff's postural limitations and found that plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, could occasionally bend at the waist and stoop down, and could occasionally kneel, crouch, and crawl. (*Id.* at 8-9). Dr. Choi evaluated plaintiff's environmental limitations and noted that plaintiff should avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, and hazards such as machinery and heights. (*Id.* at 9).

Based upon her assessment, Dr. Choi ultimately determined that plaintiff had the capacity to perform light work, including her prior work as a bank teller, cashier, and customer service representative. (*Id.* at 9-10).

### b. Plaintiff's Application for Disability Benefits

In her disability application, plaintiff claimed that her medical conditions caused her to be "very fatigued [and experience] shortness of breath if walking more than 5 min" and required her to "sit down always" due to "pain from blood clots in legs and lungs." (Dkt. 10-6 at 13). Plaintiff further asserted that she could not lift five pounds, squat,

6

bend, stand for any length of time, walk without stopping to catch her breath, or kneel. (*Id.* at 18). Plaintiff's initial disability claim was denied by the Disability Examiner on February 27, 2012. (Dkt. 10-3 at 11).

Plaintiff appealed that decision to Administrative Law Judge ("ALJ") Timothy J. Christensen, who held a hearing on November 30, 2012. (Dkt. 10-2 at 24). At the hearing, plaintiff claimed she could not work because she could only stand for fifteen to twenty minutes at a time, could only walk for half a block, and suffered from fatigue, shortness of breath, migraine headaches, backaches, sudden diarrhea, insomnia, anxiety, and depression. (*Id.* at 28-33). She attributed these symptoms to her anemia, HIV infection, and blood clots. (*Id.* at 29).

During the administrative hearing, a Vocational Expert ("VE") was asked to consider a hypothetical individual with plaintiff's background who "is limited to the light exertional level of work, could perform postural activities occasionally, should avoid concentrated exposure to temperature extremes, humidity extremes, vibration, and should not work around hazards." (*Id.* at 36). The VE testified that such a person could perform plaintiff's past work as a bank teller or a

7

cashier, (*id.*), or work as an assembler or a packager – positions with about 2,000 jobs available in the region. (*Id.* at 36-37).

The VE was also asked to consider the same hypothetical individual who, due to a combination of impairments and symptoms, would be off task more than twenty percent of the day or would be absent from the workplace two or more times per month. The VE testified that these additional limitations would be work preclusive. (*Id.* at 37).

The ALJ denied plaintiff's appeal on March 8, 2013, finding that plaintiff was not disabled as that term is defined in the Social Security Act. (*Id.* at 19). The ALJ applied the Commissioner's five-step disability analysis to plaintiff's claim. At step one, the ALJ found that plaintiff met the insured status requirement through March 31, 2012, and had not engaged in substantial gainful activity since August 2, 2011. At step two, the ALJ found that plaintiff's HIV infection, anemia, PE, DVT, and status post-surgery for uterine fibroids were serious impairments. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1 as required by 20

8

C.F.R. § 416.920(a)(4)(iii).  At step four, the ALJ found that plaintiff could perform her past relevant work as a bank teller, cashier, or clerk. The ALJ made an alternative finding under step five citing plaintiff's ability to perform light work that existed in significant numbers in the national economy.

The ALJ acknowledged plaintiff's limited ability to perform basic work activities.  (*Id.* at 14-16).  The ALJ also evaluated plaintiff's credibility by contrasting her claims with her medical records, RFC results, hearing testimony, and application for unemployment compensation.  (*Id.*).  Based upon his review of the evidence, the ALJ determined that plaintiff provided inconsistent information. "[A]lthough the inconsistent information provided by [plaintiff] may not be the result of a conscious intention to mislead, nevertheless such statements suggest that the information provided by [plaintiff] may not be entirely reliable."  (*Id.* at 16).  Despite this finding, the ALJ did not completely disregard plaintiff's description of her symptoms and limitations; instead, the ALJ considered them "to the extent that they are consistent with the evidence as a whole."  (*Id.*).

The ALJ ultimately reached the same conclusion as Dr. Choi: that plaintiff had the ability to "perform light work as defined in 20 C.F.R. 404.1567(b) except that [plaintiff] could perform postural activities occasionally.  She should avoid concentrated exposures to temperature extremes, humidity, and vibrations.  [Plaintiff] should not work around hazards." (*Id.* at 14).

The plaintiff requested Appeals Council review of the ALJ's decision.  Her request was denied on September 25, 2013, (*id.* at 2), making the ALJ's decision the final decision of the Commissioner. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). Plaintiff then filed this civil action seeking judicial review of the agency's final decision.  Magistrate Judge Binder issued his Report and Recommendation on cross-motions for summary judgment on December 9, 2014.  (Dkt. 18).  Plaintiff filed objections on December 10, 2014. (Dkt. 19).

## II.   Standard of Review

An applicant who is not satisfied with the Commissioner's final decision may obtain review in federal district court.  42 U.S.C. § 405(g). The district court "must affirm the Commissioner's conclusions absent a

10

determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). The court may affirm, modify, or reverse the Commissioner's decision, and may also choose to remand the case for rehearing where appropriate. 42 U.S.C. § 405(g).

The Commissioner's findings of fact are given substantial deference on review and are conclusive if supported by substantial evidence. *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). If there is substantial evidence to support the Commissioner's decision, the district court must affirm it even if substantial evidence also supports a contrary conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (explaining that if the

decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion.").

When deciding whether there is substantial evidence to support the Commissioner's factual findings, the district court is limited to an examination of the record and should consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). However, neither the Commissioner nor the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

In cases where a magistrate judge has submitted a Report and Recommendation and a party has filed timely objections, the district court conducts a *de novo* review of those parts of the Report and Recommendation to which the party objects. 28 U.S.C. § 636(b)(1).

## III.  Analysis

### a. Legal Framework for Disability Determinations

Pursuant to the Social Security Act, only those who have a disability may claim disability insurance benefits. 42 U.S.C. §

423(a)(1)(E). Disability, as defined by the Social Security Act, is the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment expected to result in death or which lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Commissioner's regulations provide a five-step sequential analysis to determine disability:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairment listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national

economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proof for steps one through four; at the fifth step, the burden shifts to the Commissioner. *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### b. The Commissioner's Disability Determination is Supported by Substantial Evidence

### i. Plaintiff Has Not Raised a Substantial Question That She Meets a Disability Listing

When a claimant lacks gainful employment and suffers from a severe impairment, step three of the disability analysis requires that the ALJ assess whether her impairment meets or equals a disability listing in the regulations. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013); 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. §§ 404.1520, 416.920. The disability listings contain more than one hundred qualifying conditions used to streamline disability benefits determinations. 20 C.F.R. § 416.925(a); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). If a claimant meets or equals a listed condition,

14

the ALJ must find her disabled.  20 C.F.R. § 416.920(a)(4)(iii); *see also*

*Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

Plaintiff's first objection is that the ALJ failed to address whether

her anemia meets the relevant listings of 20 C.F.R. § 404, Subpt. P,

App. 1.  Listing 7.02 defines chronic anemia as "hematocrit persisting at

30 percent or less due to any cause" paired with either "[e]valuation of

the resulting impairment under criteria for the affected body system" or

"one or more blood transfusions on an average of at least once every 2

months."  20 C.F.R. § 404, Subpt. P, App. 1, 7.02.  Chronicity must be

shown by "persistence of the condition for at least 3 months" based upon

"laboratory findings [which] reflect the values reported on more than

one examination over that 3–month period."  20 C.F.R. § Pt. 404, Subpt.

P, App. 1, 7.00B.

The ALJ addressed plaintiff's anemia under relevant listing 7.02

and found that plaintiff did not meet or equal the listing.  (Dkt. 10-2 at

14).  The ALJ adequately explained that determination; specifically, the

ALJ stated that "the record does not reveal one or more blood

transfusions occurring on average of at least once every two months."

(*Id.* at 14).  Dr. Choi also took plaintiff's anemia into account under

15

listing 7.02 and concluded that plaintiff had the capacity to resume prior work. (Dkt. 10-3 at 7-11). The ALJ relied in part upon Dr. Choi's determination regarding plaintiff's work capacity in reaching his decision. (Dkt. 10-2 at 17; Dkt. 18 at 9).

The record contains substantial evidence to support the ALJ's finding regarding plaintiff's anemia. Plaintiff's medical record shows that she received only one blood transfusion. (Dkt. 10-7 at 29). Plaintiff's anemia was initially symptomatic, causing chest pain, chills, dizziness, fatigue, headache, pallor, shortness of breath, tachycardia, and weakness. (*Id.* at 114, 231). Her anemia was managed with a single transfusion, (*id.* at 114), then with iron pills. (Dkt. 10-7 at 82, 84, 114; Dkt. 10-8 at 90). Plaintiff's doctors observed and reported on multiple occasions that her anemia symptoms had subsided. (Dkt. 10-7 at 2, 3, 4, 6, 28, 31, 45, 81, 106, 149; Dkt. 10-8 at 46, 48, 112, 114). The record as a whole does not indicate that plaintiff's anemia symptoms resulted in actual impairment. (Dkt. 10-7 at 79, 84, 90, 92, 95, 107, 119, 149-50, 154, 156, 158, 168, 212-16, 217, 218, 219,220-21, 223, 227, 235-36, 238-39, 248-49; Dkt. 10-8 at 16-19, 23, 29, 31, 48-49, 81-82, 90, 96, 98, 106).

16

Plaintiff further contends that the ALJ did not consider anemia under subpart 7.02B.  While it is true that the ALJ failed to specifically mention subpart 7.02B of the broader listing 7.02, that failure does not, in itself, constitute reversible error.  *See Sheeks*, 544 F. App'x at 641-642.  The plaintiff must do more than show that the ALJ's failure to address a relevant listing leaves an open question; instead, the plaintiff must "show that the open question is a *substantial* one that justifies a remand."  *Id.* (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)) (emphasis in original).  In order to raise a substantial question that justifies remand, the plaintiff must point to evidence demonstrating that she could reasonably meet every requirement of the listing in question.  *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-433 (6th Cir. 2014).

Plaintiff correctly states that listing 7.02B is relevant; the medical record indicates that plaintiff's hematocrit levels were at or below 30 percent during a period of at least four months between the end of August 2011 and the end of December 2011 (Dkt. 10-7 at 101, 193, 196;

17

Dkt. 10-8 at 85) before rising above 30 percent again in January 2012.[1] (Dkt. 10-8 at 86). Plaintiff's anemia required a single blood transfusion in May 2011. (Dkt. 10-7 at 29). However, plaintiff has not raised a substantial question that justifies remand. The record does not contain evidence that plaintiff's condition met the requirements of 7.02B; namely, that her anemia required a blood transfusion "at least once every 2 months" or caused impairment of another body system.[2] 20 C.F.R. § 404, Subpt. P, App. 1, 7.02.

Plaintiff also argues that the ALJ failed to evaluate her HIV infection under the relevant listings. HIV infection is evaluated according to listing 14.08. 20 C.F.R. § 404, Subpt. P, App. 1, 14.00. Here, the ALJ mentioned listing 14.08 by name and conducted a review of the record for evidence that would satisfy the requirements of 14.08 (A)-(K). (Dkt. 10-2 at 14). The ALJ determined that the record

---

[1] Plaintiff's hematocrit levels largely remained above 30 percent in 2012, (Dkt. 10-8 at 74, 76, 79, 86, 127, 131, 133), dipping below 30 percent only on occasion. (Dkt. 10-8 at 72, 75, 105, 115, 117, 122).

[2] Prior to the date of plaintiff's alleged disability and around the time of plaintiff's blood transfusion, one doctor found that plaintiff's anemia may have caused chest pain, chills, dizziness, fatigue, headache, pallor, shortness of breath, tachycardia, and weakness. (Dkt. 10-7 at 114, 231). However, plaintiff's medical records during her alleged period of disability fail to mention plaintiff's anemia, describe it as asymptomatic, or attribute her symptoms to other causes; none of these records indicate that plaintiff's anemia caused impairment. (Dkt. 10-7 at 79, 84, 90, 92, 95, 107, 119, 149-50, 154, 156, 158, 168, 212-16, 217, 218, 219,220-21, 223, 227, 235-36, 238-39, 248-49; Dkt. 10-8 at 16-19, 23, 29, 31, 48-49, 81-82, 90, 96, 98, 106).

18

evidence did not support a finding of disability under listing 14.08 or any of its subparts. (*Id*.). The ALJ specifically noted that plaintiff's HIV infection was stable and controlled. (*Id*. at 15).

In support of her argument that the ALJ failed to evaluate her HIV infection under the relevant listings, plaintiff relies on *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328 (E.D. Mich. June 18, 2012). This case is distinguishable from *Christephore*. In *Christephore*, the court found that an ALJ erred when he failed to "evaluate or even mention [l]isting 14.08." *Id*. at *5. Here, the ALJ explicitly laid out his reasoning for finding that plaintiff did not meet listing 14.08. (Dkt. 10-2 at 14). Though the ALJ did not recite each sublisting of 14.08 (A)-(K) by name, the ALJ reviewed the record and noted that plaintiff did not meet the requirements contained in each sublisting. Specifically, the ALJ found that plaintiff:

> [did] not have documented bacterial infections, fungal infections, protozoan or helminthic infections, viral infections, malignant neoplasms, skin conditions, HIV wasting, HIV encephalopathy, month long durational diarrhea, any infection that is resistant to treatment, required hospitalization, or required intravenous treatment, or repeated HIV manifestations which resulted in marked limitations in activities of daily living, social functioning, or concentration, persistence, or pace.

19

(*Id.*).

The ALJ's assessment regarding plaintiff's HIV infection is consistent with Dr. Choi's determination (Dkt. 10-3 at 7) and with the record, which indicates that Atripla successfully controlled the risk of infection and kept plaintiff's condition stable and largely asymptomatic. (Dkt. 10-3 at 6-7; Dkt. 10-7 at 5, 29, 107, 222, 223, 226).

Plaintiff further contends that Atripla caused her to have severe diarrhea. (Dkt. 19 at 3). The record indicates that plaintiff did not suffer from diarrhea in May 2011, (Dkt. 10-7 at 28, 115, 232), June 2011, (Dkt. 10-7 at 46, 55), September 2011, (Dkt. 10-7 at 110), October 2011, (Dkt. 10-7 at 79, 83), December 2011, (Dkt. 20-7 at 106, 118, 149, 235), July 2012, (Dkt. 10-8 at 99), or August 2012, (Dkt. 10-8 at 45).

Plaintiff also asserts that the ALJ failed to consider her depression or anxiety. Plaintiff fails to cite record evidence of a medical diagnosis for these conditions. The record contains a single undated letter from a behavioral health doctor stating that plaintiff "presented with symptoms of depression and anxiety;" the letter contains no formal diagnosis, nor does it specify how plaintiff's symptoms limit her ability to work. (Dkt. 10-7 at 259). Plaintiff's medical record also reflects that

20

she denied suffering from depression or anxiety in August 2012. (Dkt. 10-8 at 114). Moreover, plaintiff fails to cite a regulation or listing under which this single letter would raise a substantial question that requires remand. *See Smith-Johnson*, 579 F. App'x at 432-433; *Sheeks*, 544 F. App'x at 641-2.

Plaintiff further argues that the ALJ "failed to examine . . . the medical evidence at all" or "explain his decision." Plaintiff claims that the ALJ "simply mention[ed the listings] and offer[ed] no evaluation or discussion." (Dkt. 19 at 2). Excepting the ALJ's failure to explicitly mention each rule's individual subparts, addressed above, the record belies plaintiff's claim. The ALJ explained his reasoning for an adverse determination under each relevant listing and subpart. Plaintiff cites no additional listings that she believes the ALJ should have considered.

## ii. The ALJ's Credibility Determination is Supported by Substantial Evidence

In making a disability benefits determination, an ALJ may weigh credibility and is not required to accept a claimant's subjective complaints. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Discounting credibility is appropriate where

an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence considered. *See Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988). An ALJ may not make credibility determinations based solely upon intangible or intuitive notions; an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *See Rogers*, 486 F.3d at 247; *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978). However, when supported by substantial evidence, an ALJ's credibility findings are to be accorded great weight and deference by the district court, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *See Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

20 C.F.R. § 404.1529 outlines a two-step process for the evaluation of an applicant's alleged symptoms. First, the adjudicator must determine whether the claimant has a medically determinable physical or mental impairment. *Id.* § 404.1529(a)-(b). Statements about symptoms alone do not establish impairment; objective medical evidence is required. *Id.* Second, if a medically determinable impairment is established, the intensity and persistence of an

22

applicant's symptoms must be evaluated based upon all available evidence, including objectively verifiable medical evidence, medical observations, and the applicant's self-reported experience. *Id.* The analysis will include daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; treatment; measures used for pain relief; and other factors concerning functional limitation. *Id.* § 404.1529(c)(iii). An applicant's statements will not be disregarded solely because they are unsubstantiated by objective medical evidence; nevertheless, statements may be rejected to the extent that they are inconsistent with the rest of the evidence available. *Id.* § 404.1529(a).

Plaintiff contends that the ALJ did not give "adequate rationale for rejecting [p]laintiff's complaints about the medication side effects [or] nonexertional limitations consistent with the medication side effects." (Dkt. 19 at 3). Specifically, plaintiff believes that the ALJ's RFC ignores her claims of diarrhea, severe fatigue, and insomnia consistent with the side effects of her medication Atripla, (*id.* at 3), as well as severe pain, severe nausea, and migraines. (*Id.* at 4).

The ALJ properly followed the two-step process outlined in 20 C.F.R. § 404.1529. At step one, the ALJ determined that the objective medical evidence established that plaintiff suffered from impairments which could reasonably be expected to cause the symptoms she alleged. (Dkt. 10-2 at 15). At step two, the ALJ evaluated the intensity and persistence of plaintiff's symptoms. The ALJ weighed the appropriate factors using the evidence available; specifically, the ALJ considered plaintiff's alleged symptoms of headaches, blood clots, carpal tunnel, backaches, depression, difficulty breathing, difficulty walking, fatigue, agitation, weakness, low concentration, chest pain, shortness of breath, excessive bleeding, and "all [other] symptoms . . . consistent with the objective medical evidence and other evidence." (*Id.* at 14-15). The ALJ also considered plaintiff's medical records regarding her HIV treatment, anemia, PE, DVT, uterine dysfunction, and uterine fibroids. (*Id.* at 15). Finally, the ALJ considered plaintiff's credibility regarding the intensity and severity of her symptoms.

The ALJ ultimately made an adverse credibility determination based upon a complete review of the record. (*Id.* at 16). The ALJ determined that plaintiff made contradictory statements and that

24

plaintiff's statements regarding the frequency, duration, or severity of her symptoms were unreliable. (*Id.*).

The ALJ's credibility determination is supported by substantial evidence. Plaintiff claimed that the totality of her symptoms required her to "sit down always," that she could not "stand for any length of time" or "walk without stopping," (Dkt. 10-6 at 13, 18), and that she had diarrhea and severe pain. (Dkt. 10-2 at 3). However, the medical record and plaintiff's own statements belie those claims with respect to the frequency and duration of her symptoms after the alleged disability onset date of August 2, 2011.

In October 2011, plaintiff complained of chest and back pain, chronic shortness of breath, headaches, and night sweats. (Dkt. 10-7 at 81-83). However, she denied experiencing weakness and "her bowel movements [were] good."[3] (*Id.* at 83). In December 2011, plaintiff reported that she felt good in general, had no shortness of breath, and had no diarrhea. The examiner noted that she was negative for all symptoms. (*Id.* at 106). Another examiner found that plaintiff had

---

[3] Plaintiff did not suffer from diarrhea in May 2011, (Dkt. 10-7 at 28, 115, 232), June 2011, (Dkt. 10-7 at 46, 55), September 2011, (Dkt. 10-7 at 110), October 2011, (Dkt. 10-7 at 79, 83), December 2011, (Dkt. 20-7 at 106, 118, 149, 235), July 2012, (Dkt. 10-8 at 99), or August 2012 (Dkt. 10-8 at 45).

some lower left leg and chest pain as well as shortness of breath; however, she had no fatigue, diarrhea, chills, or other symptoms. (*Id.* at 149). In July and August 2012, plaintiff reported headaches but denied experiencing anxiety, depression, other emotional problems, fatigue, chills, night sweats, weakness, respiratory problems, or joint pain. (Dkt. 10-8 at 114). Another examiner found that she was mobile, had a steady gait, had some pain but appeared comfortable, and had normal respiration with little effort. (*Id.* at 46). In October 2012, plaintiff was experiencing some fatigue but was "doing well" with no acute distress, no shortness of breath, and no chest pain or other constitutional symptoms. (*Id.* at 48).

In sum, while plaintiff's allegations regarding the frequency, duration, and severity of her symptoms taken alone might render her disabled, a view taking into account all of the evidence, including plaintiff's extensive medical record, presents substantial evidence to support the ALJ's determination that plaintiff's symptoms were less severe than she claimed. The substantial evidence standard is quite deferential; a district court must uphold the Commissioner's decision when it is supported by substantial evidence, even if the record also

supports a different conclusion under the same standard. *Bass*, 499 F.3d at 509. Here, the record adequately supports the ALJ's conclusion that plaintiff's symptoms were more consistent with Dr. Choi's RFC than with plaintiff's subjective complaints.

### iii. The ALJ's RFC is Supported by Substantial Evidence

Social Security Ruling 96-8p addresses RFC assessments in disability determinations. It explains that

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do workrelated physical and mental activities.

SSR 96–8p, 1996 WL 374184, at *2 (July 2, 1996). An RFC assessment is based solely upon an individual's impairments and must take into account all relevant evidence in the record, including the applicant's medical history, laboratory findings, side effects of treatment (including medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms reasonably attributed to a medically determinable impairment, and evidence from attempts to work. *Id.* at *2, *5.

27

Plaintiff objects that the ALJ's RFC is not based on substantial evidence because the ALJ improperly relied solely on the Social Security Administration's doctor.   This objection lacks merit for two reasons.

First, while the ALJ gave Dr. Choi's findings substantial weight, the ALJ did not rely solely on Dr. Choi's RFC.   The ALJ specifically referenced and relied on a variety of sources from the record as a whole, including plaintiff's hearing testimony and her extensive medical history.   (Dkt. 10-2 at 15).   The ALJ ruled consistently with Dr. Choi's RFC because he found that the record as a whole "support[ed] the residual functional capacity as assessed."   (*Id.* at 16).   Specifically, the ALJ found that plaintiff's HIV infection was stable and controlled with Atripla.   (*Id.* at 15).   The ALJ further found that plaintiff's anemia was controlled after her blood transfusion and her uterine issues were resolved.   (*Id.*).

Second, plaintiff does not cite to record evidence that contradicts Dr. Choi's RFC findings, nor does plaintiff explain why it was improper for the ALJ to give Dr. Choi's findings significant weight.   While plaintiff's medical records include a great number of doctor's visits, Dr.

28

Choi provided the only opinion evidence regarding plaintiff's actual capacity to work. (Dkt. 10-3 at 6-11). Dr. Choi conducted a review of plaintiff's medical records and examined plaintiff personally. (*Id.*). Dr. Choi did not disagree with the diagnoses reached by plaintiff's other doctors; rather, Dr. Choi found that plaintiff was capable of performing light work despite her various ailments and symptoms. (*Id.*).

The record contains substantial evidence to support the ALJ's RFC; it is consistent with the only medical opinion evidence regarding plaintiff's capacity to work and plaintiff's medical record as a whole.

### iv. Plaintiff's Other Objections Lack Merit

Plaintiff's claims concerning the ALJ's failure to consider other unspecified SSA regulations, improper burden shifting, and a violation of her due process rights, are undeveloped and lack supporting explanation. Plaintiff cites no additional regulations that she believes the ALJ should have considered, fails to explain how the ALJ improperly applied the burden of proof, and offers no explanation of how her due process rights were violated. The record contains no evidence supporting these claims.

It is not sufficient for a party to mention a possible argument in a skeletal way, leaving the court to put flesh on its bones. *See McPerson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (noting that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived). Accordingly, these objections are deemed waived.

Plaintiff's claim that the ALJ's "entire decision as well as his credibility determination seems to be based solely on the fact that Plaintiff received unemployment benefits," (Dkt. 19 at 4), is also unsupported. As outlined above, the ALJ's decision was based upon a review of the record in its entirety and consideration of plaintiff's subjective claims to the extent they were consistent with objective medical findings and other evidence. Moreover, the Sixth Circuit has repeatedly made it clear that applications for unemployment benefits and disability benefits are inherently inconsistent. *See, e.g.*, *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801-802 (6th Cir. 2004) (noting that "[t]here is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [she] is ready

and willing to work") (citing *Bowden v. Comm'r*, No. 97-1629, 1999 WL 98378, at *7 (6th Cir. Jan. 29, 1999); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)).

## IV.   Conclusion

For the reasons set forth above, it is hereby ordered that:

Plaintiff's objections (Dkt. 19) to the Report and Recommendation are DENIED;

Magistrate Judge Binder's Report and Recommendation (Dkt. 18) denying plaintiff's motion for summary judgment (Dkt. 12), granting defendant's motion for summary judgment (Dkt. 17), and affirming the Commissioner's decision is ADOPTED.

IT IS SO ORDERED.

Dated: March 27, 2015          s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                               United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 27, 2015.

31

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager